Francisco FERMIN, Emilio Moreno and Andres Del Rosario, Plaintiffs,

v.

LAS DELICIAS PERUANAS RESTAU-RANT, INC., Bertha Marçoni and Nicolas De Pierola, Defendants.

No. 14–CV–0559 (RRM)(VMS).

United States District Court, E.D. New York.

Signed March 19, 2015.

Justin Cilenti, Peter Hans Cooper, Giustino Cilenti, Cilenti & Cooper, PLLC, New York, NY, for Plaintiffs.

### ORDER ADOPTING REPORT AND RECOMMENDATION

ROSLYNN R. MAUSKOPF, District Judge.

By a motion filed August 25, 2014, plaintiffs moved for a default judgment. On November 6, 2014, this Court referred the matter to the assigned Magistrate Judge, the Honorable Vera M. Scanlon. On February 27, 2014, Magistrate Judge Scanlon issued a Report and Recommendation ("R & R") recommending that this Court (1) grant plaintiffs' motion for default judgment; (2) award plaintiffs $428,008.40 in

damages, which represents $289,605.23 for plaintiff Francisco Fermin, $59,343.64 for plaintiff Emilio Moreno, $70,388.53 for plaintiff Andres Del Rosario, and $8,671.00 in attorney's and paralegal's fees and costs; and (3) order the defendants to pay plaintiffs' post-judgment interest, to be calculated from the date the Clerk of Court enters judgment 'in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961..

Magistrate Judge Scanlon reminded the parties that any objections to the R & R were due by March 16, 2015. (Doc. No. 17 at 54.) Magistrate Judge Scanlon further noted that she had mailed a copy of the relevant docket entry as well as the R & R and its appendix to each defendant. (Doc. No. 17.) As of this date, no party has filed any objections.

Pursuant to 28 U.S.C. § 636(b) and Fed. R.Civ.P. 72, the Court has reviewed the R & R for clear error. Noting the thorough review that Magistrate Judge Scanlon performed of plaintiffs' claims, affidavits, and other documents, her well-reasoned analysis of defendants' liability, and her detailed examination of plaintiffs' individual damages calculations, the Court finds no clear error in the R & R. It concurs with and adopts Magistrate Judge Scanlon's R & R in its entirety. *See Covey v. Simonton,* 481 F.Supp.2d 224, 226 (E.D.N.Y.2007).

### CONCLUSION

Accordingly, plaintiffs' motion for default judgment is GRANTED, and it is hereby

ORDERED that defendants Las Delicias Peruanas Restaurant, Inc., Bertha Marconi and Nicolas De Pierola are jointly and severally liable for damages in the amount of $428,008.40 to each of the named plaintiffs as follows:

Damages to plaintiff Francisco Fermin: $12,555.60 for unpaid minimum wages for hours worked up to forty hours per week; $38,155.68 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $8,559.55 for unpaid spread-of-hours premiums; $128,700.00 in misappropriated tips; $10,761.07 in liquidated damages under the NYLL and $14,406.80 in liquidated damages under the FLSA; and $76,466.53 in pre-judgment interest, for a total award of $289,605.23.

Damages to plaintiff Emilio Moreno: $8,726.00 for unpaid minimum wages for hours worked up to forty hours per week; $20,376.60 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $1,599.15 for unpaid spread-of-hours premiums; $4,164.64 in liquidated damages under the NYLL and $13,231.20 in liquidated damages under the FLSA; and $11,246.05 in pre-judgment interest, for a total award of $59,343.64.

Damages to plaintiff Andres Del Rosario: $13,027.20 for unpaid minimum wages for hours worked up to forty hours per week; $21,668.00 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $1,513.35 for unpaid spread-of-hours premiums; $4,696.24 in liquidated damages under the NYLL and $16,611.60 in liquidated damages under the FLSA; and $12,872.14 in pre-judgment interest, for a total damages award of $70,388.53.

And it is FURTHER ORDERED that defendants Las Delicias Peruanas Restaurant, Inc., Bertha Marconi and Nicolas De Pierola are hereby jointly and severally liable for attorney's fees and costs in the total amount of $8,671.00, and it is

FURTHER ORDERED that defendants Las Delicias Peruanas Restaurant, Inc., Bertha Marconi and Nicolas De Pierola pay post-judgment interest.

The Clerk of Court is directed to enter Judgment accordingly, transmit copies of this Order and the accompanying Judgment to each of the three defendants via U.S. Mail at the following address: Las Delicias Peruanas Restaurant, Inc., 43–07 104th Street, Corona, New York 11368. The Clerk of Court is further directed to close this case.

SO ORDERED.

### REPORT AND RECOMMENDATION

VERA M. SCANLON, United States Magistrate Judge.

Plaintiffs Francisco Fermin, Emilio Moreno and Andres Del Rosario (collectively "Plaintiffs") bring this action against Defendants Las Delicias Peruanas Restaurant, Inc. ("Las Delicias"), Berha Marconi and Nicolas De Pierola (collectively "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, as recently aménded by the Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195(3). *Docket No. 1.* Plaintiffs seek to recover unpaid minimum wages, unpaid overtime compensation, unpaid and/or misappropriated tips, unpaid "spread-of-hours" premiums for the days they worked in excess of ten hours, liquidated damages, and civil penalties pursuant to the NYLL and the WTPA, pre-judgment interest, and attorney's fees and costs. *Id.* Upon Defendants' failure to answer or otherwise respond to this action, the Clerk of Court noted Defendants' default. *Docket No. 9.* Plaintiffs filed a motion for default judgment against Defendants. *Docket Nos. 10–15.* The Honorable Roslynn R. Maus-

kopf referred the motion to me for a report and recommendation.

For the following reasons, I respectfully recommend that the District Judge **grant** the default judgment motion; **find** Defendants liable to Plaintiffs for violations of the FLSA and the NYLL as discussed herein; **enter** a judgment against Defendants for Plaintiffs in the amount of $428,008.40 in damages, which represents $289,605.23 for Mr. Fermin, $59,343.64 for Mr. Moreno, $70,388.53 for Mr. Del Rosario, and $8,671.00 in attorney's and paralegal's fees and costs; and **order** Defendants to pay Plaintiffs post-judgment interest.

### I. Background

The following facts are derived from the Complaint and are accepted as true for purposes of this motion. *Docket No. 1.* Facts relating to the procedural history of the case are derived from the docket.

### a. General Factual Background Regarding Las Delicias, The Individual Defendants' Roles, And Employment Policies And Practices At Las Delicias

Las Delicias is a restaurant and domestic business corporation organized under New York law, with a principal place of business within the Eastern District of New York, near Corona Park, Queens. *Id.* ¶ 7. The Individual Defendants are joint owners, shareholders, officers, directors, managing agents and proprietors of Las Delicias, and they both actively participated in Las Delicias's day-to-day operations during all periods of time relevant to this action. *Id.* ¶ 8. The Individual Defendants are both employers pursuant to the FLSA, 29 U.S.C. § 203(d), and related regulations such as 29 C.F.R. § 791.2, as well as under NYLL § 2(6) and related regulations under the NYLL. *Docket No. 1* ¶ 8.

The Individual Defendants each exercised control over the terms and conditions of Plaintiffs' employment in that they each had the power during all relevant periods to: (1) hire and fire employees; (2) determine rates and methods of pay; (3) determine whether an employee receives a raise and, if so, in what amount; (4) determine the number of hours an employee works by assigning work schedules; (5) supervise and control work of the employees; and (6) otherwise affect the quality of the employees' employment. *Id.* ¶¶ 9–10, 19. The Individual Defendants were present at Las Delicias on a daily basis and were considered the bosses of all of Las Delicias's employees in that the Individual Defendants personally supervised the employees' work, instructed the employees on how to perform their jobs, reprimanded the employees for any errors the employees made in executing their duties, and required that hours and pay be authorized or approved by them. *Id.* ¶¶ 10, 18.

At all times relevant to this action, Las Delicias was an "enterprise engaged in commerce" within the meaning of the FLSA in that it (1) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (2) has and has had an annual gross volume of sales of not less than $500,000.00. *Id.* ¶¶ 11, 71, 73. Defendants employed Plaintiffs, who are covered individuals within the meaning of the FLSA, §§ 206(a) and 207(a), and Plaintiffs' work was essential to Las Delicias's operations. *Docket No. 1* ¶¶ 12, 71–72.

At all relevant times, Defendants knowingly and willfully operated Las Delicias with a policy of not paying Plaintiffs: (1) their lawfully earned FLSA and New York State minimum wages for the hours worked; (2) their lawfully earned FLSA and New York State overtime compensation (time and one-half); and (3) their lawfully earned spread-of-hours premium for each day they worked a shift in excess of ten hours. *Id.* ¶¶ 13–16, 47–50, 74–78, 80–81, 92. In addition, at all relevant times Defendants knowingly and willfully operated Las Delicias with a policy of misappropriating and retaining the tips of Mr. Fermin and/or requiring Mr. Fermin to participate in an unlawful tip sharing or tip-pooling arrangement. *Id.* ¶¶ 49, 80–81.

Finally, at all relevant times, Defendants failed to maintain accurate and sufficient time and pay records. *Id.* ¶¶ 51, 82. Defendants also failed to disclose or apprise Plaintiffs of their rights under the FLSA. *Id.* ¶ 83.

#### b. Factual Background Specific To Plaintiffs' Work As Employees Of Defendants

##### i. Mr. Fermin

On April 18, 2005, Defendants hired Mr. Fermin to work as a non-exempt waiter, kitchen helper/food preparer, and cleaner at Las Delicias. *Id.* ¶ 20. In or around November 2011, Defendants promoted Mr. Fermin to the non-exempt position of cook. *Id.* ¶ 21.

Over the course of Mr. Fermin's employment, he regularly worked over forty hours a week. *Id.* ¶ 23. From April 18, 2005 until approximately October 2011, Mr. Fermin worked six days a week for twelve hours per day (11:00 a.m. until 11:00 p.m.). *Id.* ¶ 24. Beginning in November 2011 and continuing for the remainder of his employment, Mr. Fermin worked six days a week for nine-and-one-quarter hours per day (12:00 p.m. until 9:15 p.m.) on Mondays, Wednesdays and Thursdays; ten hours per day (12:00 p.m. until 10:00 p.m.) on Fridays; and eleven hours per day (11:00 a.m. until 10:00 p.m.) on Saturdays and Sundays. *Id.* ¶ 25.

Throughout the entirety of his employment, Mr. Fermin did not receive proper minimum wages and/or overtime compensation. *Id.* ¶ 26. From January 27, 2008 (the beginning of the relevant six-year limitations period) until December 31, 2008, Mr. Fermin received a fixed cash salary of $380.00 per week. *Id.* As Mr. Fermin worked seventy-two hours per week during this period, Mr. Fermin's wage amounted to $5.28 per hour ($380.00 divided by 72). *Id.*

From January 1, 2009 until approximately December 31, 2009, Mr. Fermin received a fixed cash salary of $400.00 per week. *Id.* ¶ 27. As Mr. Fermin worked seventy-two hours per week during this period, Mr. Fermin's wage amounted to $5.56 per hour ($400.00 divided by 72). *Id.*

From January 1, 2010 until October 31, 2011, Mr. Fermin received a fixed cash salary of $420.00 per week. *Id.* ¶ 28. As Mr. Fermin worked seventy-two hours per week during this period, Mr. Fermin's wage amounted to $5.83 per hour ($420.00 divided by 72). *Id.*

From November 1, 2011 until February 28, 2012, Mr. Fermin received a fixed cash salary of $420.00 per week. *Id.* ¶ 29. During this period, Mr. Fermin worked sixty hours per week, and so Mr. Fermin's wage amounted to $7.00 per hour ($420.00 divided by 60). *Id.*

From March 1, 2012 until March 24, 2013, Mr. Fermin received a fixed cash salary of $480.00 per week. *Id.* ¶ 30. During this period, Mr. Fermin worked sixty hours per week, and so Mr. Fermin's wage amounted to $8.00 per hour ($480.00 divided by 60), *id.*, which was above the minimum wage.

On March 24, 2013, Mr. Fermin's employment with Defendants terminated. *Id.* ¶ 22.

For the entirety of the period January 28, 2008 until March 24, 2013, Defendants did not pay Mr. Fermin time and one-half for the work he performed above forty hours per week as required by the FLSA and the NYLL. *Id.* ¶¶ 26–30. For the entirety of the period January 28, 2008 until October 31, 2011, which is when Mr. Fermin worked as a waiter for Defendants, Defendants took away a portion of Mr. Fermin's tips, allowing him to keep only $40.00 per week. *Id.* ¶¶ 31–32, 34. For the same period that Mr. Fermin worked as a waiter, Defendants required that he give the $40.00 in weekly tips he was permitted to retain to a restaurant-wide tip sharing program with other employees. *Id.* ¶ 33.

#### ii. Mr. Moreno

On or about December 15, 2008, Defendants hired Mr. Moreno to work as a non-exempt dishwasher and kitchen helper/food preparer at Las Delicias. *Id.* ¶ 36. Mr. Moreno worked at Las Delicias in this capacity for the entire period of his employment for Defendants. *Id.*

Over the course of Mr. Moreno's employment, he regularly worked over forty hours a week. *Id.* ¶ 37. Mr. Moreno worked six days a week for nine-and-one-quarter hours per day (12:00 p.m. until 9:15 p.m.) on Mondays, Wednesdays and Thursdays; ten hours per day (12:00 p.m. until 10:00 p.m.) on Fridays; and eleven hours per day (11:00 a.m. until 10:00 p.m.) on Saturdays and Sundays. *Id.* ¶ 38.

Throughout the entirety of his employment, Mr. Moreno did not receive proper minimum wages and/or overtime compensation. *Id.* ¶ 39. From December 15, 2008 until February 28, 2012, Mr. Moreno received a fixed cash salary of $360.00 per week. *Id.* As Mr. Moreno worked sixty hours per week during this period, Mr. Moreno's wage amounted to $6.00 per hour ($360.00 divided by 60). *Id.*

From March 1, 2012 until March 24, 2013, Mr. Moreno received a fixed cash salary of $420.00 per week. *Id.* ¶ 40. As Mr. Moreno worked sixty hours per week during this period, Mr. Moreno's wage amounted to $7.00 per hour ($420.00 divided by 60). *Id.*

On March 24, 2013, Mr. Moreno's employment with Defendants terminated. *Id.*

For the entirety of the period December 15, 2008 until March 24, 2013, Defendants did not pay Mr. Moreno time and one-half for the work he performed above forty hours per week as required by the FLSA and the NYLL. *Id.* ¶¶ 38–40.

### iii. Mr. Del Rosario

On or about March 13, 2009, Defendants hired Mr. Del Rosario to work as a non-exempt kitchen helper/food preparer at Las Delicias. *Id.* ¶ 41. Mr. Del Rosario worked at Las Delicias in this capacity for the entire period of his employment for Defendants. *Id.* ¶ 42.

Over the course of Mr. Del Rosario's employment, he regularly worked over forty hours a week. *Id.* ¶ 43. Mr. Del Rosario worked six days a week for nine-and-one-quarter hours per day (12:00 p.m. until 9:15 p.m.) on Mondays, Wednesdays and Thursdays; ten hours per day (12:00 p.m. until 10:00 p.m.) on Fridays; and eleven hours per day (11:00 a.m. until 10:00 p.m.) on Saturdays and Sundays. *Id.* ¶ 44.

Throughout the entirety of his employment, Mr. Del Rosario did not receive proper minimum wages and/or overtime compensation. *Id.* ¶ 45. From March 13, 2009 until March 23, 2013, Mr. Del Rosario received a fixed cash salary of $320.00 per week. *Id.* As Mr. Del Rosario worked sixty hours per week during this period, Mr. Del Rosario's wage amounted to $5.33 per hour ($320.00 divided by 60). *Id.*

From March 1, 2012 until March 24, 2013, Mr. Del Rosario received a fixed cash salary of $400.00 per week. *Id.* ¶ 40. As Mr. Del Rosario worked sixty hours per week during this period, Mr. Del Rosario's wage amounted to $6.67 per hour ($400.00 divided by 60). *Id.*

On March 24, 2013, Mr. Del Rosario's employment with Defendants terminated. *Id.* ¶ 42.

For the entirety of the period December 15, 2008 until March 24, 2013, Defendants did not pay Mr. Del Rosario time and one-half for the work he performed above forty hours per week as required by the FLSA and the NYLL. *Id.* ¶¶ 44–46.

### c. Procedural History

On January 27, 2014, Plaintiffs filed this action against Defendants. *Docket No. 1.* Plaintiffs filed proof of service of the summons and Complaint upon Defendants on the docket. *Docket Nos. 4–6.* Defendants did not answer or otherwise respond.

On May 15, 2014, this Court issued an Order stating that if Defendants failed to appear by June 13, 2014, Plaintiffs should request that the Clerk of the Court make an entry of default noting Defendants' failure to respond. *Docket Entry 5/15/2014.* Plaintiffs filed proof of service of this Order upon Defendants. *Docket No. 7.* Defendants did not answer or otherwise respond.

On June 13, 2014, Plaintiffs requested that the Clerk of the Court make an entry of default, *Docket No. 8,* which the Clerk of the Court did make that same day, *Docket No. 9.*

On August 25, 2014, Plaintiffs filed the instant default judgment motion. *Docket Nos. 10–15.* Plaintiffs filed proof of service upon Defendants of the motion and supporting papers on the docket. *Docket No. 16.* At this writing, Defendants have not responded.

The District Judge referred the default judgment motion to me for a report and recommendation. *Docket Entry 11/6/2014.*

#### d. Plaintiffs' Claims

Under the respective limitations periods of the FLSA and the NYLL, Plaintiffs seek from Defendants unpaid minimum wages, unpaid overtime compensation, unpaid and/or misappropriated tips, related liquidated damages, reasonable attorney's fees, costs and expenses, and pre-judgment interest. *Docket No. 1* ¶¶ 86, 102. Under the NYLL alone, Plaintiffs seek unpaid spread-of-hours premiums, and related liquidated damages. *Id.* ¶ 92–93.

#### e. Plaintiffs' Affidavits And Other Documentary Evidence Submitted In Support Of Their Request For Damages

Plaintiffs have submitted affidavits and other documents as evidence in order to support their claims.

To begin, each Plaintiff has submitted an individualized affidavit attesting to the time period he worked for Defendants, the nature of that work, the hours he worked, and the compensation he received. *Docket No. 11* (Mr. Fermin's affidavit); *Docket No. 12* (Mr. Moreno's affidavit); *Docket No. 13* (Mr. Del Rosario's affidavit). Mr. Fermin's affidavit is slightly longer than Mr. Moreno's and Mr. Del Rosario's affidavits because Mr. Fermin is the only Plaintiff who earned tips; his affidavit describes how Defendants withheld some of his tips and obligated him to contribute the remaining tips into a restaurant tip pool. *Docket No. 11.*

In addition, Plaintiffs submit an affidavit from their attorney Justin Cilenti in which Mr. Cilenti, in support of Plaintiffs' petition for attorney's fees, states his hours and billing rate with an explanation as to why he believes it is justified. *Docket No. 14.*

Finally, Mr. Cilenti's affidavit attests to the veracity of three exhibits he has prepared for the Court to aid in its determination of damages. *Id.* The first exhibit is a spreadsheet calculating Plaintiffs' wages paid and wages due with other damages calculations. *Docket No. 14–4.* The second exhibit is a timesheet itemizing the hours that Mr. Cilenti and a paralegal Jennett Pena spent litigating this case, and calculating a total figure for attorney's and paralegal's fees. *Docket No. 14–5.* The third exhibit is a summary of the expenses incurred litigating this case. *Docket No. 14–6.*[1]

### II. Legal Standard

Federal Rule of Civil Procedure ("FRCP") 55 establishes a two-step procedure by which a party may obtain a default judgment. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC,* 779 F.3d 182, 185–86 (2d Cir.2015) (citing FRCP 55); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir.1993) (same); *see also City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 128 (2d Cir.2011); *N.Y. v. Green,* 420 F.3d 99, 104 (2d Cir.2005). First, pursuant to FRCP 55(a), if a party has failed to plead or otherwise defend, the Clerk of the Court must enter a certificate of default by making a notation on the record. Fed.R.Civ.P. 55(a). Second, after this entry of default,

---

[1]. Mr. Cilenti's affidavit appends other exhibits as well, but as these are the Complaint, the returned executed summonses and the Clerk of the Court's entry of default, when I cite to these documents in this report and recommendation, I cite to the place on the docket where they were originally filed. *See Docket No. 14–1* (Complaint); *Docket No. 14–2* (the returned executed summonses); *Docket No. 14–3* (the Clerk of the Court's entry of default). Plaintiffs also submitted a proposed default judgment order at *Docket No. 14–7.*

if the party still fails to appear or move to set aside the default, then the court may enter a default judgment. Fed.R.Civ.P. 55(b).

■ The trial court has "sound discretion" to grant or deny a motion for a default judgment. *Enron Oil,* 10 F.3d at 95. This discretion is not absolute—the Second Circuit has an "oft-stated preference" for judging disputes on the merits. *Id.* In fact, the Second Circuit has warned courts that granting a default judgment is an "extreme sanction" that is to be used as a tool of last resort. *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). Accordingly, the district court must carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other. *See Enron Oil,* 10 F.3d at 96. With these dual goals of conserving judicial resources and affording due process, doubts should generally be construed in favor of the defaulting party. *See id.*

■ On a default judgment motion, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the plaintiff's complaint, except for claims relating to damages. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.,* 699 F.3d 230, 234 (2d Cir.2012); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981); *see also Bricklayers,* 779 F.3d at 189–90; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992); *see generally Steginsky v. Xcelera Inc.,* 741 F.3d 365, 368 (2d Cir.2014) (under both a motion to dismiss and a motion for default, the plaintiff must proffer well-pleaded allegations). Once the defendant is found to be in default, the plaintiff bears the burden of showing that he is entitled to recovery. *See Danser v. Bagir Int'l,* 571 Fed.Appx. 54, 55 (2d Cir.

2014); *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas,* 509 Fed.Appx. 54, 58 (2d Cir.2013); *Ferrara v. PJF Trucking LLC,* No. 13 Civ. 7191(JS)(AKT), 2014 WL 4725494, at *5 (E.D.N.Y. Sept. 22, 2014); *State Farm Mut. Auto. Ins. Co. v. Kalika,* No. 04 Civ. 4631(CBA)(RML), 2007 WL 4326920, at *7 (E.D.N.Y. Dec. 7, 2007).

■ A plaintiff must prove that the compensation he or she seeks relates "to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup,* 973 F.2d at 159. Generally, the court may make this determination through an evidentiary hearing or proceeding. Fed.R.Civ.P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.,* 122 F.R.D. 151, 156 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2d Cir.1989). A court is not required to conduct a hearing if there is a basis for the damages specified in the default judgment. *See* Fed.R.Civ.P. 55(b)(2); *Cement & Concrete Workers,* 699 F.3d at 234 ("Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'" (quoting *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993))); *Finkel v. Romanowicz,* 577 F.3d 79, 87 (2d Cir.2009) ("Rule 55(b) commits this decision to the sound discretion of the district court."); *see also Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974) (stating that while a default judgment constitutes an admission of liability, the amount of damages needs to be proven, unless the amount is liquidated or can be mathematically calculated). Therefore, a court may rely on "detailed affidavits and documentary evidence," in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997); *see Bricklayers,* 779 F.3d at 189–90; *Cement*

*& Concrete Workers,* 699 F.3d at 234; *Tamarin,* 13 F.3d at 54. The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999); *see Cement & Concrete Workers,* 699 F.3d at 232.

### III. Discussion

#### a. Service

■ "A default judgment is ordinarily justified where a defendant fails to respond to the complaint." *SEC v. Anticevic,* No. 05 Civ. 6991(KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir.1984)). The Court should consider whether Plaintiffs have shown that Defendants had notice about the action and an opportunity to defend against it. I look to the service here to see if Defendants had notice of the suit. FRCP 4(e)(1) allows service to be made in accordance with the service rules of the state where the district is located or service is made.

I am satisfied that Plaintiffs properly served the corporate Defendant Las Delicias insofar as Plaintiffs' process server delivered the papers to Alex Fuentes, a self-described managing agent of Las Delicias appearing of suitable age (35 years), at Las Delicias's place of business of 43–07 104th Street, Corona, New York 11368, on February 7, 2014. *See* New York Business Corporation Law ("NY BCL") § 306(a); *Docket No. 4.*

As for the Individual Defendants, New York Civil Practice Law and Rules ("NY CPLR") § 308(2) allows for service of process

by delivering the summons within the state to a person of suitable age and discretion at the actual place of business ... of the person to be served and by ... mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other ....

N.Y. CPLR § 308(2). I am also satisfied that Plaintiffs properly served the Individual Defendants with notice of this action. *Docket Nos. 5, 6.* Plaintiffs' process server delivered the papers to a co-worker of majority age (the same Mr. Fuentes mentioned above) of the Individual Defendants at their actual place of business, namely Las Delicias (at the same address mentioned above). *Id.* In addition, Plaintiffs verified with Mr. Fuentes that the Individual Defendants are not, to his knowledge, in the military service as that term is defined in relevant statutes. *Id.* Finally, Plaintiffs' process server sent a copy of the same to the Individual Defendants via United States mail within twenty days as directed by N.Y. CPLR § 308(2). *Id.*

In sum, I find that service was proper under both the N.Y. BCL as to Las Delicias and under the N.Y. CPLR as to the Individual Defendants.

#### b. The Factors Relevant To A Default Judgment Are Satisfied

■ When considering whether to grant a default judgment, a court must be "guided by the same factors [that] apply to a motion to set aside entry of a default." *First Mercury Ins. Co. v. Schnabel Roofing of Long Island, Inc.,* No. 10 Civ. 4398(JS)(AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011); *see Enron Oil,* 10 F.3d at 96. These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the

opposing party; and (3) whether the defaulting party has presented a meritorious defense. *See Swarna v. Al–Awadi*, 622 F.3d 123, 142 (2d Cir.2010); *Enron Oil*, 10 F.3d at 96.

█ As for the first factor, a defendant's failure to respond to the complaint is sufficient to demonstrate willfulness. *See Bds. of Trs. of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 12 Civ. 3363(KAM)(VMS) (E.D.N.Y. Feb. 3, 2014) (ECF No. 17 at 5) (the defendant's nonappearance and failure to respond equated to willful conduct), *report & recommendation adopted*, No. 12 Civ. 3363(KAM)(VMS), 2014 WL 674098, at *4 (E.D.N.Y. Feb. 3, 2014); *Traffic Sports USA v. Modelos Restaurante, Inc.*, No. 11 Civ. 1454(ADS)(AKT), 2012 WL 3637585, at *2 (E.D.N.Y Aug. 1, 2012) (same), *report & recommendation adopted*, No. 11 Civ. 1454(ADS)(AKT), 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012); *cf. New York v. Green*, 420 F.3d 99, 109 (2d Cir.2005) (in the context of a motion to vacate a default judgment, the defendants' failure to respond to the complaint or "take action after receiving notice that the clerk had entered a default against them," supported a finding of willfulness); Here, Plaintiffs properly served Defendants with notice, but Defendants neither answered nor responded in any other way, nor did they request an extension of time in which to respond. Defendants' failure to respond to the pleadings therefore establishes willfulness.

Concerning the second factor, Defendants' failure to respond and Plaintiffs' efforts to prosecute their case are sufficient to demonstrate that ignoring the default would prejudice Plaintiffs, " 'as there are no additional steps available to secure relief in this Court.' " *Flanagan v. N.*

*Star Concrete Constr., Inc.*, No. 13 Civ. 2300(JS)(AKT), 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226(RLC)(RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)); *see Joseph v. HDMJ Rest., Inc.*, 970 F.Supp.2d 131, 148 (E.D.N.Y.2013) (same).

█ Third, Defendants cannot establish a meritorious defense, because where a defendant has not "filed an answer, there is no evidence of any defense." *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02 Civ. 9044(LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)); *see Joseph*, 970 F.Supp.2d at 143 ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment."). As all three factors are satisfied, a default judgment would be proper in the present circumstances.

Accordingly, I find that Defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the allegations contained therein as fact for the purposes of an inquiry into liability such that I now proceed to consider whether those facts establish Defendants' liability for Plaintiffs' FLSA, NYLL and WTPA claims.

### c. Liability

#### i. Plaintiffs Qualify For the FLSA's And The NYLL's Protections As Employees Of Defendants

##### 1. Plaintiffs Qualify For The FLSA's Protections

To establish a claim under the FLSA for minimum wage or overtime compensation, a plaintiff must show that he or she is an

"employee" of the defendant within the meaning of the FLSA and that the defendant is an "enterprise engaged in commerce." *See* 29 U.S.C. §§ 206(a), 207(a); *see Chen v. Major League Baseball*, 6 F.Supp.3d 449, 453–54 (S.D.N.Y.2014).

Plaintiffs have shown that they are employees within the FLSA's definition of that term. Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Insofar as Plaintiffs' Complaint alleges that Defendants employed Plaintiffs within this statutory meaning, "[i]t follows ... that for purposes of this default, [they] qualif[y] as ... 'employee[s]' under the FLSA." *Garcia v. Badyna*, No. 13 Civ. 4021(RRM)(CLP), 2014 WL 4728287, at \*5 (E.D.N.Y. Sept. 23, 2014); *see Velu v. Velocity Exp., Inc.*, 666 F.Supp.2d 300, 307 (E.D.N.Y.2009) (stating that the "ultimate question is ... 'whether, as a matter of economic reality, the worker[ ] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]'") (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.*, 615 F.Supp.2d 186, 192–93 (S.D.N.Y.2009)).

It should be noted that the FLSA "contains a litany of exemptions" to qualified employees. *Chen*, 6 F.Supp.3d at 454 (citing 29 U.S.C. § 213). Among the employees exempt from the FLSA's minimum-wage provisions are "*bona fide* 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advanced knowledge in a field of science or learning." *Ghosh v. Neurological Servs. of Queens*, No. 13 Civ. 1113(ILG)(CLP), 2015 WL 431807, at \*3 (E.D.N.Y. Feb. 3, 2015) (quoting 29 U.S.C. § 213(a)(1) and explain-

ing that the provisions of Section 206 do not apply to *bona fide* executive, administrative or professional employees or to employees working in the capacity of outside salesman); *see* 29 C.F.R. §§ 541.300(a) (elaborating upon who constitutes an "employee employed in a *bona fide* capacity"), 541.301 (elaborating upon the term "learned professionals").

 "[T]he issue of whether [an employee's responsibilities] render the employee exempt from the FLSA's overtime provision is a question of law," *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F.Supp.2d 383, 387 (E.D.N.Y.2010) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)). Plaintiffs' Complaint states that they are all non-exempt employees under the FLSA, *Docket No. 1* ¶¶ 21, 36, 41, but this does not suffice to establish the matter because, "[a]lthough factual allegations in a complaint are deemed admitted upon default, legal conclusions are not," *Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc.*, No. 06 Civ. 1028(NG)(SMG), 2007 WL 3232244, at \*4 (E.D.N.Y. Oct. 31, 2007).[2] Other aspects of Plaintiffs' Complaint do establish the matter, *i.e.*, the fact that Plaintiffs' respective jobs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA. *Docket No. 1* ¶¶ 20–21, 36, 41; *see Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09 Civ. 486(ETB), 2011 WL 1431978, at \*3–4 (E.D.N.Y. Apr. 14, 2011) (finding that the FLSA regulations did not exempt the plaintiff from the FLSA's protections due to his position as a cook, which did not make him an "executive employee," a "creative professional," or a "learned professional."); *Espinoza v. 953 Assocs. LLC*,

---

**2.** It should be noted that the FLSA's "exemptions are affirmative defenses, for which *employers* have the burden of proof." *Chen*, 6

F.Supp.3d at 454 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)) (emphasis added).

280 F.R.D. 113, 130 (S.D.N.Y.2011) (certifying an FLSA class including servers, bus-persons, food preparers and dishwashers); *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 320–22 (S.D.N.Y. 2007) (stating that waiters, bartenders, runners and/or bussers were non-exempt employees under the FLSA).

Plaintiffs have also shown that Las Delicias is an "enterprise engaged in commerce." The FLSA defines that term as an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done ... not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Plaintiffs' Complaint restates this statutory definition without providing any additional facts. *Docket No. 1* ¶¶ 11, 71, 73 (reciting 29 U.S.C. § 203(s)(1)(A)(i)-(ii)'s language). In *Huerta v. Victoria Bakery*, No. 10 Civ. 4754(RJD)(JO), 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012), the court considered whether allegations such as these sufficed to prove that a business was an "enterprise engaged in commerce" in an FLSA action in default posture. According to this court, the *Huerta* complaint, which dealt with the FLSA claims of breadmakers at a bakery, did

> provide[ ] a sufficient basis ... for inferring the requisite interstate commerce connection under the sensible approach

adopted by other judges in this district. The complaint alleges that [the] plaintiffs ... were employed as breadmakers in a Brooklyn-based bakery with over half a million dollars in annual sales. It is inconceivable that some of the breadmaking materials used by [the] plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York.

*Id.; see also Locke v. St. Augustine's Episcopal Church*, 690 F.Supp.2d 77, 88 (E.D.N.Y.2010) (stating that the standard is met "where the employer's business consumed products in the course of operation").[3]

Similarly, here, it is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State. *Docket No. 1* ¶¶ 11, 20, 71, 73. As a restaurant, it is reasonable to infer that Las Delicias requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more. It is also reasonable to infer that some of these materials moved or were produced in interstate commerce. *See, e.g., Archie v. Grand Centr. P'ship, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y.1998) (Sotomayor, J.) (in the context of an FLSA action, considering whether the defendants' maintenance employees could be said to have "handle[d] goods or materials that ha[d] moved or been produced in in-

**3.** It should be noted that there is some conflict on this point among the judges in this District. For example, in *Gunawan v. Sake Sushi Restaurant*, 897 F.Supp.2d 76, 85–86 (E.D.N.Y.2012), this Court held that it "believe[d] that inferring an interstate commerce nexus from nothing more than the general description of an employer's business—however likely the conclusion may seem—is in tension with both the presumption against

default and the purpose of [FRCP] 55." (collecting cases on both sides of the issue); *see Siemieniewicz v. CAZ Contracting Corp.*, No. 11 Civ. 704(JG)(JO), 2012 WL 5183375, at *8 (E.D.N.Y. Sept. 21, 2012) (noting that the "judges in this district have come to inconsistent conclusions about the extent to which enterprise coverage may be inferred from a pleading's description of an employer's business") (collecting cases).

terstate commerce," and finding that the maintenance workers had, because some of the defendants' "bags, brooms, shovels, pails, [etc.]" "undoubtedly moved in interstate commerce to New York City").

### 2. Plaintiffs Qualify For The NYLL's Protections

To recover under the NYLL, Plaintiffs must prove that they were "employees" and that Defendants were "employers" as defined by the statute. *See Lauria v. Heffernan*, 607 F.Supp.2d 403, 407–08 (E.D.N.Y.2009). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13 Civ. 4021(RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).

Plaintiffs' burden in establishing that they are "employees" entitled to NYLL protections is similar to the definition they had to satisfy under the FLSA. As "[t]he New York Labor Law 'is the state analogue to the federal FLSA,'" *D'Arpa v. Runway Towing Corp.*, No. 12 Civ. 1120(JG), 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting *Santillan v. Henao*, 822 F.Supp.2d 284, 292 (E.D.N.Y.2011)), "[t]he NYLL's definitions are *nearly* identical to the FLSA's," *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y.2013) (emphasis added). One way in which the NYLL's definitions are "nearly identical" to the FLSA's definitions, and not identical, is that the New York common law test for who constitutes an employer for the purposes of the NYLL "focuses more on 'the degree of control exercised by the purported employer'" over the purported employee, "as opposed to the 'economic reality of the situation.'" *Hart v. Rick's Cabaret Int'l., Inc.*, 967 F.Supp.2d 901, 923 (S.D.N.Y.2013). Plaintiffs' Complaint sufficiently alleges that Plaintiffs were em-

ployees within the meaning of Sections 2 and 651 of the NYLL. *Docket No. 1* ¶¶ 8, 88. To the extent there is any doubt as to whether Plaintiffs are employees, I consider *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003), in which the New York Court of Appeals set forth five factors relevant to determining control under the common law test, including whether the worker: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Bynog*, 1 N.Y.3d at 198, 770 N.Y.S.2d 692, 802 N.E.2d at 1090.

As for the first *Bynog* factor, Plaintiffs did not work at their own convenience insofar as they had to arrive at Las Delicias at a specific hour to begin their shifts, and their shifts ended at a specific hour as well. *Docket No. 1* ¶¶ 21–46; *cf. Sellers v. Royal Bank of Canada*, No. 12 Civ. 1577(KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014) (finding that the plaintiff worked at his own convenience because he could arrive and leave work whenever he liked, and take breaks at his pleasure as well). The fourth and fifth factors fall in Plaintiffs' favor as well, as Plaintiffs were on Defendants' set payroll (receiving anywhere from $380.00 to $480.00 per week), and they worked fixed schedules. *Docket No. 1* ¶¶ 21–46; *cf. Malouf v. Equinox Holdings, Inc.*, 38 Misc.3d 1223(A), 2012 WL 7154115, at *10 (N.Y.Sup. Oct. 22, 2012) (stating that the plaintiff, who sporadically appeared as a guest class instructor at the defendant gym, did not meet the payroll or fixed schedule *Bynog* factor). On the other hand, the second and third *Bynog* factors are neutral, as the Complaint is silent as to whether Plaintiffs were restricted from engaging in other employment and as to

whether they received any fringe benefits.[4] In any event, concerning other employment and fringe benefits, "these [two] factors, in context, merit modest weight." *Hart*, 967 F.Supp.2d at 925.

In sum, Plaintiffs qualify as employees under the NYLL. *Docket No. 1* ¶¶ 8, 88.

## ii. The Individual Defendants' Status As Plaintiffs' Employers Under The FLSA And The NYLL, And Joint And Several Liability

The Court next considers the Individual Defendants' liability under the FLSA and the NYLL.

### 1. The Individual Defendants Are Plaintiffs' Employers Under The FLSA

The FLSA defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "When it comes to 'employer' status under the FLSA, control is key." *Glatt*, 293 F.R.D. at 525. Absolute control is not a prerequisite. Whether an individual is considered an employer for the purposes of FLSA liability "does not require continuous monitoring of employees, looking over their shoulders at all times, or

any sort of absolute control of one's employees." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999).

In *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984), the Second Circuit outlined a multi-factor test, grounded in "economic reality," for determining whether there is an employer-employee relationship between an individual defendant and an FLSA plaintiff.[5] The *Carter* factors ask:

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Id.* (quoting *Bonnette v. Cali. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983)); *see Irizarry v. Catsimatidis*, 722 F.3d 99, 105–06 (2d Cir.2013) (discussing the *Carter* factors in determining an individual defendant's individual liability for an FLSA violation). "No one of the four [*Carter*] factors standing alone is dispositive"; instead, the "economic reality test encompasses the totality of the circumstances." *Herman*, 172 F.3d at 139.[6]

---

4. Plaintiffs' Complaint likely does not mention whether Defendants had discussed their freedom to engage in other employment because each Plaintiff was already working from sixty to seventy-two hours a week and, as a practical matter, Plaintiffs could not reasonably work much more. Furthermore, in light of Plaintiffs' allegations that Defendants paid them subpar wages, it would be reasonable to infer that Plaintiffs' Complaint does not mention fringe benefits because Defendants did not offer any.

5. The *Carter* test has also been called the "formal control" test. *Teri v. Spinelli*, 980 F.Supp.2d 366, 374 (E.D.N.Y.2013). In the event that an individual defendant is not found to have formal control, he or she may still be found to be a joint employer along with a corporate defendant under another test

called the "functional control" test, set forth by the Second Circuit in *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003). I do not reach the *Zheng* test here because I find that Plaintiffs satisfy *Carter*.

6. In *Herman's* discussion of the totality of the circumstances, the Second Circuit stated that a district court may also consider facts beyond the *Carter* factors. *See Herman*, 172 F.3d at 140. In particular, an individual defendant's "operational control" of a company (general "management, supervision, and oversight" of a company's affairs) could weigh in favor of employer status in the absence of other strong evidence that the individual defendant had "direct control over the [plaintiff employees]." *Id.* Relatedly, a district court may consider an individual defen-

Plaintiffs' allegations that both Individual Defendants had the power to hire and fire the employees, to determine rates of pay and work schedules and to supervise and control the employees' work establish three of the *Carter* factors and depict an "economic reality" in which the Individual Defendants were Plaintiffs' joint employers along with Las Delicias. *Docket No.* 1 ¶¶ 9–10; *see Teri*, 980 F.Supp.2d at 376 ("[T]he Court concludes that no reasonable jury considering the 'economic realities' of the [parties'] relationship could find that [the individual defendant] was not [the p]laintiffs' joint employer under the FLSA and NYLL.").

Plaintiffs concede that one of the *Carter* factors is not satisfied vis-à-vis the Individual Defendants, namely that they maintained employment records, and that is because Plaintiffs alleged that sufficient employment records were not kept at all. *Docket No. 1* ¶¶ 51, 82. The lack of one *Carter* factor is not fatal to Plaintiffs' claims. *See generally Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 145 (2d Cir.2008). In *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir.2003), the Second Circuit observed that it had in another decision affirmed a district court's determination that an individual defendant jointly employed a company's employees "where the [individual defendant] exercised three of the four employer prerogatives identified in *Carter*." (citing *Herman*,

172 F.3d at 139). The *Zheng* Court reiterated that with respect to *Carter*,

economic reality is determined based upon *all* the circumstances, and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.... We did not suggest—indeed, we expressly denied—that the four [*Carter*] factors ... are the exclusive touchstone of the joint employment inquiry under the FLSA.

*Zheng*, 355 F.3d at 71 (citing *Herman*, 172 F.3d at 139) (emphasis in the original).

As Plaintiffs have demonstrated that the Individual Defendants satisfy three of the four *Carter* factors, the Individual Defendants are Plaintiffs' employers and should be held individually liable for the FLSA violations. *See Galeana v. Lemongrass on Broadway Corp.*, —— F.Supp.3d ——, ——, No. 10 Civ. 7270(GBD)(MHD), 2014 WL 1364493, at *16 (S.D.N.Y. Apr. 4, 2014) (stating that satisfaction of the *Carter* test showed that the individual defendant was the FLSA plaintiff's joint employer along with the corporate defendant). The fact that Individual Defendants did not keep employment records does not undermine this finding because no employment records were kept; thus, the economic reality is that all employer tasks that were handled by the Individual Defendants.[7]

---

dant's "potential power" at a company, *i.e.*, if an individual defendant's lack of "operational control" is due to the individual defendant choosing not to exercise power he or she possesses, that may also weigh in favor of finding employer status. *Irizarry*, 722 F.3d at 110–11 (cautioning, however, that mere "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employ-. ees' "); *see Herman*, 172 F.3d at 139 ("Control may be restricted, or exercised only occasionally, without removing the employment

relationship from the protections of the FLSA, since such limitations on control 'do[] not diminish the significance of its existence.' " (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir.1982))). I mention the "operational control" and "potential power" considerations for completeness, but I need not reach them here because Plaintiffs' allegations satisfy three of the four traditional *Carter* factors.

7. It should be noted that the failure to keep the records is itself an FLSA and a NYLL violation. *See* 29 U.S.C. § 211(c); NYLL

## 2. The Individual Defendants Are Plaintiffs' Employers Under The NYLL

"Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F.Supp.2d 253, 308 n. 21 (S.D.N.Y.2011); *see Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010); *Jiao v. Shi Ya Chen,* No. 03 Civ. 165(DF), 2007 WL 4944767, at *9 n. 12 (S.D.N.Y. Mar. 30, 2007). While "the New York Court of Appeals has not yet resolved whether the NYLL's standard for employer status is coextensive with the FLSA's ... there is no case law to the contrary." *Wang v. LW Rest., Inc.,* 81ʼ F.Supp.3d 241, 258, No. 12 Civ. 5008(MKB), 2015 WL 363871, at *13 (E.D.N.Y. Jan. 29, 2015) (quoting *Hart,* 967 F.Supp.2d at 940).

██ As a result, in light of my finding that the Individual Defendants were Plaintiffs' employers for the purposes of FLSA liability, I find that the Individual Defendants were Plaintiffs' employers for the purposes of NYLL liability as well. *See Apple v. Atlantic Yards Dev. Co., LLC,* No. 11 Civ. 5550(JG), 2014 WL 5450030, at *6–9 (E.D.N.Y. Oct. 27, 2014) (concluding that the defendants were not the plaintiffs' employers under the FLSA or the NYLL using the *Carter* analysis, stating that the NYLL was not addressed separately because its definitions were nearly identical to the FLSA's, and "courts use the same tests to determine joint employment under both the NYLL and the FLSA"); *Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 342 n. 25 (S.D.N.Y.2005) ("The 'economic reality' test will be used to determine whether [the

individual defendant] is [the plaintiff's] 'employer' as defined under both state and federal law, as there is general support for giving [the] FLSA and the [NYLL] consistent interpretations.") (quotation & citation omitted).

## 3. Defendants Are Joint And Severally Liable

As the Court has found that Las Delicias and the Individual Defendants were jointly Plaintiffs' employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiffs' favor. *See Pineda v. Masonry Const., Inc.,* 831 F.Supp.2d 666, 685 (S.D.N.Y.2011) (allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and a NYLL employer, and to impose joint and several liability with corporate defendants for wage law violations); *see also Ahmed v. Subzi Mandi, Inc.,* No. 13 Civ. 3353(CBA)(RER), 2014 WL 4101224, at *4 (E.D.N.Y. May 27, 2014) (same), *report & recommendation adopted,* No. 13 Civ. 3353(CBA)(RER), 2014 WL 4101247 (E.D.N.Y. Aug. 18, 2014); *Rodriguez v. Almighty Cleaning, Inc.,* 784 F.Supp.2d 114, 129 (E.D.N.Y.2011) (same).

## i. The Relevant Limitations Periods Under The FLSA And The NYLL

"The statute of limitations under the FLSA is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.' " *Rosario v. Valentine Ave. Discount Store, Co., Inc.,* 828

§ 195(4); *see Racewicz v. Alarm Processing Sys., Inc.,* No. 14 Civ. 2325(ILG), 2014 WL 4417354, at *1 (E.D.N.Y. Sept. 8, 2014) (noting that the maintenance of time and pay records are an FLSA requirement).

F.Supp.2d 508, 519 (E.D.N.Y.2011) (quoting 29 U.S.C. § 255(a), which states the applicable statute of limitations for claims relating to "unpaid minimum wages, unpaid overtime compensation, or liquidated damages"). Here, as Plaintiffs allege that Defendants' failure to pay minimum wage was knowing and willful, the three-year limitations period applies. *See Easterly v. Tri–Star Transport Corp.*, No. 11 Civ. 6365(VB), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015) ("[A]s [the p]laintiff alleges that [the defendant in default] committed FLSA violations willfully, . . . the three-year federal period applies.") (collecting cases).

In contrast, the NYLL establishes a six-year limitations period. *See* N.Y. Lab Law §§ 198(3), 663(3); *Man Wei Shiu v. New Peking Taste Inc.*, No. 11 Civ. 1175(NGG)(RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014). Therefore, Plaintiffs may recover under the NYLL for claims arising outside of the FLSA's three-year limitations period. *See Pinzon v. Paul Lent Mech. Sys. Inc.*, No. 11 Civ. 3384(DRH)(WDW), 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), *report & recommendation adopted*, No. 11 Civ. 3384(DRH)(WDW), 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

As the Complaint was filed on January 27, 2014, the state law limitations period includes claims dated from January 27, 2008 to January 27, 2014, while the federal law limitations period includes claims dated from January 27, 2011 to January 27, 2014. Only Mr. Fermin's employment began prior to the NYLL's six-year limitations period. *Docket No. 1* ¶ 20. Plaintiffs have not advanced and the Court has not considered any claims related to Mr. Fermin's employment from April 18, 2005 to January 26, 2008. *Id.*

## ii. Defendants' Liability Under The FLSA And The NYLL

### 1. Defendants May Not Benefit From The Tip Credit Provisions Of The FLSA And The NYLL Due To Their Tip Practices, And Defendants Are Liable For Repayment Of Mr. Fermin's Misappropriated Tips Under The NYLL

Under the FLSA and the NYLL, employers in some circumstances may apply a tip credit against the full minimum wage that would otherwise be owed to an employee, such as a waiter, who regularly receives tips. *See* 29 U.S.C. § 203(m) (the federal tip credit provision); N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.3 (the tip credit provision of the Hospitality Wage Order); *see generally* N.Y. Comp.Codes R. & Regs. tit. 12, §§ 146–1.1(a), 146–3.1(a) (the Hospitality Wage Order applies to "any restaurant"); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir.2011) (explaining the application of the tip credit under the FLSA); *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 110 n. 1 (2d Cir.2012) (explaining the application of the tip credit under the NYLL); *Mendez v. Int'l Food House Inc.*, No. 13 Civ. 2651(JPO), 2014 WL 4276418, at *3 (S.D.N.Y. Aug. 28, 2014) (discussing the federal and New York tip credit provisions).

Mr. Fermin is the only Plaintiff who worked for Defendants as a waiter, which he did from April 18, 2005 through October 31, 2011. *Docket No. 1* ¶¶ 20–21. During that time, he earned around $700.00 a week in tips, $660.00 of which was "taken away from him by [the] Defendants"; some of these misappropriated tips were retained by Defendants, and some were given to "employees who do not normally and customarily receive tips as part of their employment." *Docket No. 1*

¶¶ 31, 34; *Docket No. 11* ¶ 19. Mr. Fermin "was permitted to retain only $40.00 per week in tips...." *Docket No. 11* ¶¶ 18–19. As the only customarily tipped employee among Plaintiffs, Mr. Fermin thus initially presents a legal scenario that differs in part from the circumstances presented by his co-Plaintiffs, in that the Court must first determine whether Defendants were entitled to any tip credit against his wages.

■ The tip credit is inapplicable in this case. The FLSA provides that "[a]n employer may not avail itself of the tip credit if it requires [tipped] employees to share their tips with employees who do not customarily and regularly receive tips," for example, managers or kitchen workers. *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124(AT), 2014 WL 1487279, at *2 (S.D.N.Y. Apr. 11, 2014); *see* 29 U.S.C. § 203(m); *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011), *report & recommendation adopted*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2038973 (S.D.N.Y. May 24, 2011). Similarly, the NYLL provides that "[n]o employer ... shall demand ... any part of the gratuities received by an employee, or retain any part of a gratuity[.]" N.Y. Lab. Law § 196–d (stating some exceptions not relevant here); N.Y. Comp.Codes R. & Regs. tit. 12, §§ 146–2.14(e) ("[Tip-e]ligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental."), 146–2.16(b) ("Only food service workers may receive distributions from the tip pool."). "Thus, an employer loses its entitlement to the tip credit when it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." *Shahriar*, 659 F.3d at 240.

Mr. Fermin alleges that Defendants, including the Individual Defendants who act as managers, misappropriated his tip money for themselves, and also that Defendants required him to participate in a tip-pooling arrangement at Las Delicias which saw Mr. Fermin's money distributed to "employees who do not normally and customary receive tips as part of their employment." *Docket No. 1* ¶ 33; *Wicaksono*, 2011 WL 2022644, at *5 (stating that the defendant was not entitled to a tip credit under the FLSA because the defendant obligated the plaintiffs to share their tips with kitchen staff and a manager).

Additionally, under both the FLSA and the Hospitality Wage Order, an employer is not eligible for the tip credit unless it provides the employee with notice of the employer's intent to utilize the tip credit. 29 U.S.C. § 203(m) (the employee must be "informed by the employer of the provisions of this subsection"); N.Y. Comp. Codes R. & Regs. tit. 12, § 146–2.2(a) (requiring written notice of "the amount of tip credit, if any, to be taken from the basic minimum hourly rate"); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.3; *Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000(NGG)(RML), 2014 WL 4175730, at *3 n. 4 (E.D.N.Y. Aug. 20, 2014) (discussing the federal and state tip credit notice requirements; collecting cases); *Wicaksono*, 2011 WL 2022644, at *5 (same). Here, Mr. Fermin asserts that he was not provided with such notice. *Docket No. 11* ¶ 25. On the record before the Court, Defendants are not eligible for the tip credit, and the Court will apply the full minimum wage when considering Mr. Fermin's claims.

Mr. Fermin also asks the Court to hold Defendants liable for repaying him the tips

that Defendants illegally retained.[8] The misappropriation of tips is prohibited by the NYLL. N.Y. Lab. Law § 196–d ("No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."); *see* N.Y. Comp.Codes R. & Regs. tit. 12, §§ 146–2.14, 146–2.15, 146–2.16 (prohibiting tip sharing and tip pooling with employees for whom "personal service to patrons" is not "a principal and regular part of their duties"); *cf. Barenboim v. Starbucks Corp.*, 698 F.3d 104, 106 (2d Cir.), *certified question answered*, 21 N.Y.3d 460, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013) ("[E]mployees who regularly provide direct service to patrons remain tip-pool eligible even if they exercise a limited degree of supervisory responsibility."), *answer to certified question conformed to*, 549 Fed. Appx. 1 (2d Cir.2013). The Complaint alleges that Mr. Fermin worked as a waiter from April 18, 2005 through October 31, 2011, and that during that time Defendants illegally misappropriated tips from him every week. *Docket No. 1* ¶¶ 20–21. As these tips were shared with employees who did not customarily receive tips, including the Individual Defendants (who were joint owners and managers rather than service workers), *see Docket No. 1* ¶¶ 8–10, 33–34, Plaintiffs have established that Defendants are liable, under the NYLL, for the misappropriation of Mr. Fermin's tips. *See Gunawan*, 897 F.Supp.2d at 89 (the plaintiff was "entitled to the reimbursement of the portion of her tips the Restaurant improperly required her to share with the chef").[9]

**8.** I note that Plaintiffs' counsel briefed this issue by citing to FLSA and NYLL regulations dealing with the rule that "an employee's wages must be 'free and clear' of all 'kickbacks directly or indirectly to the employer or to another person for the employer's benefit . . . [that] cut[ ]into the minimum or overtime wages required to be paid him under the [FLSA]." *He v. Home on 8th Corp.*, No. 09 Civ. 5630(GBD), 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014); *see* 29 C.F.R. § 531.35; N.Y. Lab. Law § 198–b; N.Y. Lab. Law. § 198–d; *Docket No. 1* ¶ 79; *Docket No. 15* at 14. As Defendants are liable for the misappropriated tips under the NYLL, I need not reach whether the kickback provisions provide an alternate basis for making the tip credit unavailable to Defendants, nor whether any other grounds for relief might have been pled. *See generally Dolinski v. Avant Business Serv. Corp.*, No. 13 Civ. 4753(PKC), 2014 WL 316991, at *5 (S.D.N.Y. Jan. 28, 2014) (finding that the plaintiffs had sufficiently alleged that the employer's requirement that its employees purchase $100.00 radios and Metrocards to use in the performance of their work was a kickback); *Williams v. Secure Res. Commc'n Corp.*, No. 11 Civ. 3986(PAC) (JCF), 2013 WL 4828578, at *6 (S.D.N.Y. Sept. 10, 2013) (finding that an employer's requirement that an employee's security guard license fee be taken out of the employee's wage was a kickback); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 257 (S.D.N.Y.2008) (holding that an employee's bicycle purchase and repair expenses, incurred in order to deliver his restaurant employer's food to customers, was a kickback to the employer for the employer's benefit such that it had to be deducted from the employee's wage).

**9.** As to liability under the FLSA, in *Wicaksono*, the court cautioned that while a claim for reimbursement of tips arises under the NYLL, a similar claim is not available under the FLSA where the employer does not receive a tip credit. *Wicaksono*, 2011 WL 2022644, at *7 n. 3 (explaining that the FLSA "prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage" and "[o]nly New York law explicitly prohibits the retention of an employee's tips by individuals other than 'similar' employees"); *cf. Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220, 230 (S.D.N.Y.2002) ("Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.").

Finally, the appropriate time period for the tip misappropriation claim is shorter than what Mr. Fermin now alleges in support of this motion. The Complaint alleged that, as of November 1, 2011, Mr. Fermin was promoted at Las Delicias to work as a cook, *id.* ¶ 21, which is not typically a job for which a worker receives tips. *See Chhab v. Darden Rests., Inc.,* No. 11 Civ. 8345(NRB), 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013) ("[C]ertain back-of-the-house restaurant staff, including cooks and dishwashers, cannot participate in valid tip pools under the FLSA because they do not interact with customers"; collecting cases). Moreover, the Complaint thrice describes Mr. Fermin's tip problems as occurring "[d]uring the period of time while [Mr. Fermin was] performing work as a waiter," *Docket No. 1* ¶¶ 31–33, and Plaintiffs did not allege the same tip problems occurred when Mr. Fermin worked as a cook, *id.* ¶¶ 21, 29–30. Nevertheless, in the damages calculation submitted in support of the present motion, Mr. Fermin's claim for Defendants' return of misappropriated tips was not limited to the time he worked as a waiter, and instead covered the maximum time period of January 27, 2008 through March 24, 2013. *Docket No. 14–4* at 2; *see Docket No. 11* ¶ 19 (in his affidavit, Mr. Fermin states that he received "approximately $700 in tips each week through October 2011, and approximately $600 in tips each week thereafter"). To the extent Mr. Fermin is now claiming tip garnishment for the time he worked as a cook, such a claim exceeds the well-pleaded allegations, and it must be disregarded. Moreover, this claim is inconsistent with his position that Defendants unlawfully misappropriated tips by requiring him to share his tips with "employees who do not normally and customarily receive tips as part of their employment." *Docket No. 1* ¶¶ 33–34. Therefore, Mr. Fermin has not established

liability for tips garnishment beyond October 31, 2011.

In light of the foregoing, I respectfully recommend that the District Judge **find** Defendants liable under the NYLL, but not the FLSA, to reimburse the tips that Mr. Fermin earned from January 27, 2008 through October 31, 2011. I recommend that the District Judge **find** that Defendants are not liable under the NYLL or the FLSA to reimburse tips to Mr. Fermin for the period beginning November 1, 2011 through March 24, 2013, when Mr. Fermin worked as a cook. Finally, I recommend that the District Judge **find** that Defendants are not entitled to a tip credit as the Court weighs Mr. Fermin's minimum wage-and-overtime compensation claims under the FLSA and the NYLL.

## 2. Defendants Should Be Held Liable To Plaintiffs For Failing To Pay Them A Minimum Wage As Guaranteed By The FLSA And The NYLL

The federal minimum wage as set by the FLSA was $7.25 an hour for all times relevant to this litigation. 29 U.S.C. § 206(a)(1)(C) (setting a minimum wage of $7.25 as of July 24, 2009). The New York minimum wage set by the NYLL was $7.15 for the period beginning January 1, 2007 through December 30, 2013. N.Y. Lab. Law § 652.

An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL "has the burden of proving that he performed work for which he was not properly compensated." *Pineda v. Masonry Const., Inc.,* 831 F.Supp.2d 666, 674 (S.D.N.Y.2011) (discussing this burden of proof in the context of overtime; citing *Grochowski v. Phoenix Const.,* 318 F.3d 80, 87 (2d Cir.2003)); *Flores v. J & B Club House Tavern, Inc.,* No. 10 Civ. 4332(GAY), 2012 WL 4891888, at *1

(S.D.N.Y. Oct. 16, 2012) (discussing that NYLL plaintiffs have the burden to prove that they performed the work for which they claim the defendant failed to compensate them).

Here, Plaintiffs' Complaint adequately proves that they performed such work. Mr. Fermin, Mr. Moreno and Mr. Del Rosario have set forth timelines of their work schedules (both in terms of days per week and hours per day worked) and the corresponding pay rates. *Docket No. 1* ¶¶ 20–46. Dividing Plaintiffs' weekly pay by the number of hours worked in the corresponding week, it can be readily determined that Defendants did not compensate Plaintiffs with the $7.25 federal minimum wage or the $7.15 state minimum wage during the relevant time periods, with the sole exception of paying Mr. Fermin $8.00 per hour from March 1, 2012 through March 24, 2013. *Id.* ¶ 26 (Mr. Fermin received $5.28 per hour from January 27, 2008 through December 31, 2008), ¶ 27 (Mr. Fermin received $5.56 per hour from January 1, 2009 through December 31, 2009), ¶ 28 (Mr. Fermin received $5.83 per hour from January 1, 2010 through October 31, 2011), ¶ 29 (Mr. Fermin received $7.00 per hour from November 1, 2011 through February 28, 2012), ¶ 30 (Mr. Fermin received $8.00 per hour from March 1, 2012 through March 24, 2013), ¶ 39 (Mr. Moreno received $6.00 per hour from December 15, 2008 through February 28, 2012), ¶ 40 (Mr. Moreno received $7.00 per hour from March 1, 2012 through March 24, 2013), ¶ 45 (Mr. Del Rosario received $5.33 per hour from March 13, 2009 through February 28, 2012), ¶ 46 (Mr. Del Rosario received $6.67 per hour from March 1, 2012 through March 24, 2013).[10]

Plaintiffs' allegations in this action, taken as fact, reliably estimate the minimum wage violation for four reasons. First, Plaintiffs' estimates do not exhibit any uncertainty as to the fact that the relevant event occurred in or around the time in question. Second, Plaintiffs have submitted affidavits in which they testify about their own schedules and pay, making the estimates even more credible. *Docket*

10. It should be noted that Plaintiffs' Complaint estimates the dates on which Plaintiffs' work schedules and pay rates changed. For example, the Complaint states that Mr. Fermin worked 72 hours per week from the beginning of his employment until "approximately October 2011"; then, "beginning in or about November 2011," Mr. Fermin's schedule changed and he thereafter worked 60 hours a week. *Docket No. 1* ¶¶ 20–35. The Complaint's description of Mr. Moreno's and Mr. Del Rosario's experiences uses similar language to estimate when their work schedules or pay rates changed. *Id.* ¶¶ 35–46; *see, e.g., Docket Nos. 12–13.* In other wage-protection actions, courts have found such estimates to sufficiently prove the hours of work performed by a plaintiff. *See Jemine v. Dennis,* 901 F.Supp.2d 365 (E.D.N.Y.2012) (stating that in light of the FLSA's remedial purpose and broad public policy goals, an employee can meet his burden to establish that he performed work for which he was not properly compensated "through estimates based on his own recollection"); *Santillan v. Henao,* 822 F.Supp.2d 284, 294 (E.D.N.Y. 2011) ("As courts have found, a plaintiff can meet this burden 'by relying on recollection alone.' "); *see also Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (stating that where an employer's employment records are poor, "the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.").

*Nos. 11, 12, 13.* Third, insofar as Plaintiffs were paid in cash and therefore do not have the benefit of paper records to consult, there is nothing suspicious about the fact that they cannot recall the dates with precision. Fourth, Defendants failed to maintain accurate and sufficient time and pay records (an omission exacerbated by their default). *Docket No. 1* ¶¶ 51, 82. Both federal and New York law provide that employers are required to make, keep and preserve records of employee wages, hours, and employment conditions. *See* 29 U.S.C. § 211(c); N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.6; *Pineda,* 831 F.Supp.2d at 674 (citing the federal and state statutes). In *Rivera v. Ndola Pharmacy Corp.,* 497 F.Supp.2d 381, 389 (E.D.N.Y.2007), this Court held that, "[a]s defendants' records are inadequate, plaintiff's estimates may constitute sufficient evidence, and 'the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records.'" (quoting *Anderson,* 328 U.S. at 688, 66 S.Ct. 1187); *see also Pineda,* 831 F.Supp.2d at 674 ("If an employer fails to keep such records, [a] plaintiff may meet his burden by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" (quoting *Grochowski,* 318 F.3d at 87)).

In sum, by defaulting, Defendants have not contradicted Plaintiffs' reasonably specific allegations and credible affidavits, which sufficiently set forth the days and hours they worked for Defendants and the pay that Defendants gave Plaintiffs as compensation for that work.

In light of the foregoing, I respectfully recommend that the District Judge **find**

Defendants liable to Plaintiffs for failing to pay them the FLSA and the NYLL minimum wage. Defendants failed to pay Mr. Fermin the NYLL minimum wage from January 27, 2008 through March 24, 2013, and the FLSA minimum wage from January 27, 2011 through March 24, 2013.[11] Defendants failed to pay Mr. Moreno the NYLL minimum wage from December 15, 2008 through March 24, 2013, and the FLSA minimum wage from January 27, 2011 through March 24, 2013. Defendants failed to pay Mr. Del Rosario the NYLL minimum wage from March 13, 2009 through March 24, 2013, and the FLSA minimum wage from January 27, 2011 through March 24, 2013.

**3. Defendants Should Be Held Liable To Plaintiffs For Failing To Pay Them Overtime Compensation As Required By The FLSA And The NYLL**

"The FLSA mandates that [a covered employee] be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 200 (2d Cir.2013) (citing 29 U.S.C. § 207(a)); *see Mendez v. U.S. Nonwovens Corp.,* 2 F.Supp.3d 442, 451 (E.D.N.Y.2014). The NYLL largely adopts the same standard as the FLSA with respect to overtime compensation, *i.e.,* a covered employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata,* 723 F.3d at 200 (citing N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.2).

In three recent opinions, the Second Circuit dismissed FLSA overtime claims

---

**11.** The Court notes the relevant time periods for Defendants' liability, but as discussed below, the Court is not suggesting a double recovery as to minimum wage, overtime or spread-of-hours pay under the FLSA and the NYLL.

and, in the process, clarified "the degree of specificity" that a plaintiff must meet in order to "make a Section 207(a)(1) FLSA overtime claim." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir.2013); *Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85 (2d Cir. 2013); *see Nakahata,* 723 F.3d at 200–201. The plaintiff's burden as clarified by these three cases applies in the context of the NYLL as well. *See* N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.2 (stating that an employer shall pay an employee for overtime "in the manner and methods provided in and subject to the exemptions of [the FLSA]"); *Rocha v. Bakhter Afghan Halal Kababs, Inc.,* 44 F.Supp.3d 337, 351 (E.D.N.Y.2014) (citing and quoting *Nakahata,* 723 F.3d at 200, for the proposition that "[t]he NYLL adopts th[e] same standard … [as the] FLSA definition of overtime into the [NYLL]").

In *Lundy,* the Second Circuit held that "in order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy,* 711 F.3d at 114. The Court then dismissed the FLSA plaintiff's claim because it alleged that on top of a regular 37.5–hour workweek the plaintiff had to complete a smattering of additional small tasks which "suppl[ied] nothing but low-octane fuel for speculation, not the plausible claim that is required. " *Id.* at 114–15. Later that same year, in *Nakahata,* the Second Circuit built upon the notion of permissible inference, stating that an FLSA plaintiff must provide "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given week." *Nakahata,* 723 F.3d at 201. Finally, in *Dejesus,* the Second Circuit discussed *Lundy* and *Nakahata,* and clarified that it did not mean to provide an "all-purpose pleading template [for] alleging overtime," for example by requiring that all plaintiffs with FLSA overtime compensation claims actually estimate the number of hours they worked in "some or all workweeks." *Dejesus,* 726 F.3d 85 at 88–90. However, *Dejesus* stated that "some factual context" was necessary in FLSA overtime claim allegations in order to "nudge [an FLSA plaintiff's] claim 'from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Here, by contrast to the pleading deficiencies in *Lundy, Nakahata* and *Dejesus,* Plaintiffs provide the Court with concrete allegations regarding the overtime that they worked. For example, Mr. Fermin states that he worked over forty hours a week from April 18, 2005 until March 24, 2013 without exception. *Docket No. 1* ¶¶ 23–33; *see id.* ¶¶ 35–46 (concerning Mr. Moreno and Mr. Del Rosario); *see also Tackie v. Keff Enter. LLC,* 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014) (finding that the FLSA plaintiff adequately alleged an overtime claim by stating that "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week").[12] Unlike the *Nakahata* plaintiffs,

12. In *Perkins v. 199 SEIU United Healthcare Workers East,* 73 F.Supp.3d 278, 289–90, No. 14 Civ. 1681(PAE), 2014 WL 4651951, at *8 (S.D.N.Y. Sept. 17, 2014), the court found that the plaintiff's FLSA and NYLL overtime claims were insufficiently pleaded because the plaintiff only stated that he worked more than forty hours "at all relevant times" without, for example, "identifying any specific … time period." The allegations in Plaintiffs' Complaint do not suffer from the same lack of specificity described in *Perkins,* as Plaintiffs here, for example, break down the facts relating to Mr. Fermin's FLSA and NYLL overtime claims into very specific time periods. *See Docket No. 1* ¶¶ 20, 24, 26–28 (through Octo-

who attempted to prove that they worked more than forty hours a week by referencing several small uncompensated tasks which, when added up, arguably took them over forty hours of work in a given week, Mr. Fermin's allegations demonstrate the complained-of overtime without the need for any inference because his set schedule exceeded forty working hours per week. *Compare Nakahata*, 723 F.3d at 201, *with Docket No. 1* ¶¶ 23–33.[13]

In light of the foregoing, I respectfully recommend that the District Judge **find** Defendants liable to Plaintiffs for failing to pay them overtime compensation pursuant to the FLSA and the NYLL. Defendants failed to pay Mr. Fermin proper overtime compensation under the NYLL minimum wage from January 27, 2008 through March 24, 2013, and under the FLSA from January 27, 2011 through March 24, 2013. Defendants failed to pay Mr. Moreno proper overtime compensation under the NYLL from December 15, 2008 through March 24, 2013, and under the FLSA from January 27, 2011 through March 24, 2013. Defendants failed to pay Mr. Del Rosario proper overtime compensation under the NYLL from March 13, 2009 through March 24, 2013, and under the FLSA from January 27, 2011 through March 24, 2013.

### 4. Defendants Should Be Held Liable To Plaintiffs For Failing To Pay Them Spread–Of–Hours Pay As Required By The NYLL

Plaintiffs also bring a spread-of-hours claim against Defendants under the NYLL. The NYLL spread-of-hours claim, for which there is no counterpart under the FLSA, provides that "an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours." *Man Wei Shiu*, 2014 WL 652355, at *10 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4).

"The relevant regulation of the New York State Department of Labor ( [']NYS-DOL['] ) ... provides, in pertinent part, that, 'in addition to the minimum wage,' if an employee works in excess of 10 hours in a day, '[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate.' " *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13 Civ. 2506(RLM), 2014 WL 6674583, at *10 (E.D.N.Y. Nov. 25, 2014) (quoting N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.4). A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage. *See Guadalupe v. Tri–State Emp't,*

---

ber 31, 2011, Mr. Fermin worked a set 72–hour schedule, but was not paid premium overtime wages), ¶¶ 25, 29–30 (between November 1, 2011 and March 24, 2013, Mr. Fermin worked a set 60–hour schedule, but was not paid premium overtime wages). Plaintiffs' Complaint employs a similarly rigorous approach to the overtime allegations on behalf of Mr. Moreno and Mr. Del Rosario. *Id.* ¶¶ 35–46.

**13.** *Cf. Casci v. Nat'l Fin. Network, LLC*, No. 13 Civ. 1669(DRH)(GRB), 2015 WL 94229, at *3 (E.D.N.Y. Jan. 7, 2015) (finding that the plaintiff's pleadings did not sufficiently allege an FLSA overtime claim in light of *Lundy's*, *Nakahata's* and *Dejesus's* requirements because

the plaintiff stated that he worked more than forty hours in "certain weeks" without specifying which ones or how many and did not offer information from which the court "could reasonably infer that he worked more than forty hours in any 'given' work week"); *Sampson v. MediSys Health Network, Inc.*, No. 10 Civ. 1342(SJF)(ARL), 2013 WL 1212655, at *5 (E.D.N.Y. Mar. 18, 2013) (stating that the plaintiff's allegations of an overtime violation did not meet *Lundy's* standards because "[a]lthough the addition of training and/or pre- and post-shift work during a [forty-hour week] would have put [the plaintiff] over the forty (40) hour threshold requirement, [the plaintiff] has not alleged that this actually occurred in any week").

*Mgmt. & Consulting, Inc.,* No. 10 Civ. 3840(NG)(CLP), 2013 WL 4547242, at \*12–13 (E.D.N.Y. Aug. 28, 2013) (citing to NYSDOL opinion letters stating this prerequisite).

 Here, Plaintiffs' Complaint demonstrates that Mr. Fermin, Mr. Moreno and Mr. Del Rosario at times worked in excess of ten hours in a day. As for Mr. Fermin, the Complaint states that from April 19, 2004 through October 31, 2011, Mr. Fermin worked twelve-hour shifts within a single day, six days every week. *Docket No. 1* ¶ 24. From November 1, 2011 through March 24, 2013, Mr. Fermin worked eleven-hour shifts in a single day, two days every week. *Id.* ¶ 25 (Mr. Fermin worked 9.25–hour shifts three days of the week during this period, and ten-hour shifts one day during this period). Next, Mr. Moreno worked eleven-hour shifts within a single day, two days a week, from December 15, 2008 through March 24, 2013. *Id.* ¶¶ 35–38 (the other four days a week, Mr. Moreno worked either 9.25–hour or ten-hour shifts). Finally, Mr. Del Rosario worked eleven-hour shifts within a single day, two days a week, from March 13, 2009 through March 24, 2013. *Id.* ¶¶ 41–44 (the other four days a week, Mr. Del Rosario worked 9.25–hour or ten-hour shifts). Plaintiffs' Complaint further alleges that Defendants failed to pay the NYLL minimum wage to Plaintiffs. *Id.* ¶¶ 20–46. Thus, Plaintiffs have established Defendants' liability as to spread-of-hours pay.

In light of the foregoing, I respectfully recommend that the District Judge **find** Defendants liable to Plaintiffs for spread-of-hours pay. Mr. Fermin is entitled to spread-of-hours pay for the twelve-hour shifts he worked six days a week from January 27, 2008 through October 31, 2011, and for the eleven-hour shifts he worked two days a week from November 1, 2011 through March 24, 2013. Mr. Mor-

eno is entitled to spread-of-hours pay for the eleven-hour shifts he worked two days a week from December 15, 2008 through March 24, 2013. Mr. Del Rosario is entitled to spread-of-hours pay for the eleven-hour shifts he worked two days a week from March 13, 2009 through March 24, 2013.

### v. Conclusion

In light of the foregoing, I respectfully recommend that the District Judge **find** that Plaintiffs qualify for the FLSA's and the NYLL's protections as employees employed by an enterprise engaged in commerce.

I further recommend that the District Judge **find** Defendants liable for repayment of Mr. Fermin's misappropriated tips under the NYLL and, relatedly, that as to Mr. Fermin, Defendants cannot benefit from the FLSA and the NYLL tip credit provisions due to their tip practices.

Finally, I recommend that the District Judge **find** Defendants liable to all Plaintiffs for failing to pay them (1) the minimum wage guaranteed by the FLSA and the NYLL; (2) overtime compensation as required by the FLSA and the NYLL; and (3) spread-of-hours pay as required by the NYLL.

### d. Damages

### i. The Law Relevant To Plaintiffs' Individual Damages Calculations

Before calculating Plaintiffs' individual damages corresponding to Defendants' liability under the various FLSA and NYLL provisions, there are some common questions to resolve concerning their requests for liquidated damages and pre-judgment interest under the FLSA and the NYLL. *Docket Nos. 1, 15.*

### 1. Liquidated Damages

#### a. FLSA

"Under the FLSA, an employer may be liable for liquidated damages 'in an additional equal amount' to the amount owed for 'unpaid minimum wages, or ... unpaid overtime compensation.'" *Begum v. Ariba Discount, Inc.,* No. 12 Civ. 6620(DLC), 2015 WL 223780, at *2 (S.D.N.Y. Jan. 16, 2015) (quoting 29 U.S.C. § 216(b)); *see Barfield,* 537 F.3d at 150. "But 'if the employer shows ... that the act or omission giving rise to [FLSA liability] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award [a lesser] amount thereof.'" *Begum,* 2015 WL 223780 at *2 (quoting 29 U.S.C. § 260). "The employer's burden is 'a difficult one,' and 'double damages are the norm and single damages the exception.'" *Copantitla,* 788 F.Supp.2d at 316 (quoting & citing *Barfield,* 537 F.3d at 150).

Here, insofar as Defendants have not answered or otherwise appeared, they have never alleged, much less shown, that their failure to pay Plaintiffs the statutorily mandated minimum wage or overtime compensation "was in good faith and that [they] had reasonable grounds for believing that [their] ... omission was not a violation of the [FLSA]." 29 U.S.C. § 260. By contrast, Plaintiffs have alleged that Defendants' FLSA violations were knowing and willful. *Docket No. 1* ¶¶ 13–16, 47–50, 74–78, 80–81, 92. I will therefore calculate 100% in liquidated damages for Plaintiffs on their FLSA minimum wage-and-overtime compensation claims.

#### b. NYLL

The NYLL was amended on April 9, 2011 to provide the same 100% in liquidated damages as the FLSA. *Chenensky v. N.Y. Life Ins. Co.,* No. 07 Civ. 11504(WHP), 2012 WL 234374, at *2 (S.D.N.Y. Jan. 10, 2012). Employees may recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1–a); *see Chenensky,* 2012 WL 234374, at *2. Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g, P.C.,* 900 F.Supp.2d 355, 360 n. 3 (S.D.N.Y.2012). As the 100% liquidated damages amendment has been in effect since April 9, 2011, and it is generally recognized not to be retroactive, any liquidated damages that a plaintiff may be entitled to after this date is calculated at 100% of the amount owed and any recovery before that date shall be calculated at the original 25% amount owed. *See Chenensky,* 2012 WL 234374, at *3; *Mejia v. East Manor USA Inc.,* No. 10 Civ. 4313(NG), 2013 WL 3023505, at *6 n. 8 (E.D.N.Y. Apr. 19, 2013); *Wicaksono,* 2011 WL 2022644, at *6 n. 2. As Defendants have not appeared, they have not established good faith to rebut the liquidated damages presumption, and the Court will assess the appropriate amount, based on the time period in question.

I note that Plaintiffs describe their requested FLSA and NYLL liquidated damages as "non-stacking"; in other words, they have requested only FLSA liquidated damages (not FLSA and NYLL liquidated damages) for the period covered by the 3–year FLSA limitations period, *i.e.,* January 27, 2011 through March 24, 2013. *Docket No. 14–4* at 2, 4, 6; *cf. Tackie v. Keff Enters. LLC,* No. 14 Civ.2074(JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) (noting that courts "in the Second Circuit are divided over whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL"). I ac-

cordingly will not include double liquidated damages in my calculations and related recommendations, although I will include NYLL liquidated damages for the period January 27, 2008 through January 26, 2011, and FLSA liquidated damages for the period January 27, 2011 through March 24, 2013. As there is no claim for spread-of-hours available under the FLSA, Plaintiffs request liquidated damages only on that portion of their spread-of-hours claim that falls outside the FLSA statute of limitations period (namely, January 27, 2008 through January 26, 2011). *Docket No. 14–4* at 2, 4, 6. My calculations and related recommendations will include this figure.[14]

## 2. Pre-judgment Interest

### a. Plaintiffs Are Not Entitled To Pre-judgment Interest Under The FLSA

■ "It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages." *Begum*, 2015 WL 223780, at *3 (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). As FLSA liquidated damages are meant to be compensatory and not punitive, there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation. *See Overnight Motor Transp. Co. v. Mis-sel*, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Here, as I calculate FLSA liquidated damages and include them in my recommendations, pre-judgment interest under the FLSA is inappropriate and I recommend that it not be awarded.

### b. Plaintiffs Are Entitled To Pre-judgment Interest Under The NYLL

■ In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest. *See Begum*, 2015 WL 223780, at *3. This dual availability occurs because New York State views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicative damages award. *See Janus*, 2012 WL 3878113, at *8–9 (explaining that liquidated damages under the NYLL are meant to "constitute a penalty" on an employer's willful withholding of wages due, while pre-judgment interest is meant "to compensate a plaintiff for the loss of use money"); *Santillan v. Henao*, 822 F.Supp.2d 284, 297 (E.D.N.Y.2011) (quoting *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 265 (2d Cir.1999) (explaining that "liquidated damages under the Labor Law constitute a penalty to deter an employer's willful withholding of wages due")). The availability of both NYLL liquidated damages and pre-judgment interest "remains

---

**14.** Even if Plaintiffs might be entitled to liquidated damages on their entire spread-of-hours claim, Plaintiffs are also entitled to request less than their full damages, and the Court need not determine Plaintiffs' entitlement to damages they do not seek. Notwithstanding Plaintiffs' discussion, in their memorandum of law, of misappropriated tips, spread-of-hours premiums and liquidated damages, Plaintiffs elected not to ask for these damages during certain limited time periods. In addition to the decisions described above, Plaintiffs elected not to pursue, on this motion, the WTPA claim for civil penalties raised in the Complaint, *compare Docket No. 1* at 23 *with Docket No. 15* at 22, and Plaintiffs did not ask for liquidated damages on Mr. Fermin's claim for repayment of unlawfully retained tips, *Docket No. 14–4* at 2. Plaintiffs' damages chart, *Docket No. 14–4*, contains a step-by-step explanation of Plaintiffs' reasoning, such that it is apparent that these decisions were not the product of mere typographical error. Therefore, the Court will not address damages not included on the damages chart.

true even where liability is found not only under the NYLL , but also under the FLSA." *Begum,* 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 n. 7 (2d Cir.2011)). "Prejudgment interest is calculated [ ] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia,* 2013 WL 3023505, at *8 n. 11 (citing *Janus v. Regalis Const., Inc.,* No. 11 Civ. 5788(ARR)(VVP), 2012 WL 3878113, at *8 (E.D.N.Y. July 23, 2012)).

The N.Y. CPLR provides that interest "shall be at the rate of nine *per centum per annum,*" N.Y. C.P.L.R. § 5004, and

computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. CPLR § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest," *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir.1994), and interest is calculated using the simple rate, not a compounded rate, *see Gortat v. Capala Bros.,* 949 F.Supp.2d 374, 386 (E.D.N.Y.2013) (" 'When unpaid wages were incurred at various times, . . . [s]imple prejudgment interest is calculated from a singular, midpoint date . . . through the date judgment is entered' " (quoting *Maldonado v. La Nueva Rampa, Inc.,* No. 10 Civ. 8195(LLS)(JLC), 2012 WL 1669341, at *11

(S.D.N.Y. May 14, 2012))); *see also Coulibaly v. Millennium Super Car Wash, Inc.,* No. 12 Civ. 4760(CBA)(CLP), 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (using the midpoint of the claims to calculate pre-judgment interest).

Applying the reasonable intermediate date approach, I will select a date for each Plaintiff representing the midpoint of the claims sought by that Plaintiff in this litigation. For Mr. Fermin, the midpoint date for the purposes of my NYLL prejudgment interest calculations will be August 25, 2010 (the midpoint between January 27, 2008 and March 24, 2013). For Mr. Moreno, the midpoint date will be February 2, 2011 (the midpoint between December 15, 2008 and March 24, 2013). For Mr. Del Rosario, the midpoint date will be March 19, 2011 (the midpoint between March 13, 2009 and March 24, 2013).

### ii. Plaintiffs' Individual Damages Calculations

### 1. The Damages Calculations Specific To Mr. Fermin

The calculations relevant to Mr. Fermin's damages are provided in Appendix I at 1–3. First, I note that in determining the statutory minimum wage, I applied the higher of the minimum wage available under the FLSA or the NYLL, to the extent the statute of limitations allowed.[15] Where Mr. Fermin earned a higher wage than the minimum wage, the Court considered that pay rate in place of the minimum wage. Thus, unlike Plaintiffs, the Court did not include any spread-of-hours damages for the period of time in which Mr. Fermin earned greater than the minimum wage. Similarly, in contrast to Plaintiffs' calculation, the Court has not included damages

---

**15.** Plaintiffs may not recover for unpaid wages under both statutes, *see, e.g., Pinzon,* 2012 WL 4174725, at *3 (the plaintiff may "not double dip" or obtain a "double recov-

ery" of unpaid overtime wages under the FLSA and the NYLL), and Plaintiffs in this case do not request such relief or suggest it would be appropriate.

for misappropriated tips during the time period in which Mr. Fermin worked as a cook.

Second, although the Court's totals differ in some respects from Plaintiffs' totals, *compare* Appendix I at 1–3 *with Docket No. 14–4* at 1–2, the differences are explained by, 1) the aforementioned difference in the spread-of-hours and misappropriated tips awards, 2) a typographical error by Plaintiffs,[16] and 3) apparent rounding differences in the calculation of the number of weeks between January 27, 2008 and January 26, 2011, and between January 27, 2011 and March 24, 2013, in relation to the liquidated damages calculation.[17] This final reason is relevant to each Plaintiff, not only Mr. Fermin.

Third, as discussed above, Plaintiffs did not request a double recovery of liquidated damages under both the FLSA and the NYLL, nor did Plaintiffs request liquidated damages on the misappropriated tips award. Plaintiffs rightly did not request liquidated damages under the FLSA for unpaid spread-of-hours premiums, as such relief is not available under the FLSA, but Plaintiff also did not request liquidated damages under the NYLL for a portion of these premiums. As discussed above, Plaintiffs' detailed calculations demonstrate that these choices were not the product of typographical error, so the Court will not include these amounts in its calculations.

In summary, I recommend that Defendants be **ordered** to pay Plaintiffs, concerning Mr. Fermin, $12,555.60 for unpaid minimum wages for hours worked up to

forty hours per week; $38,155.68 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $8,559.55 for unpaid spread-of-hours premiums; $128,700.00 in misappropriated tips; and $10,761.07 in liquidated damages under the NYLL and $14,406.80 in liquidated damages under the FLSA, all of which totals $213,138.70.

In addition, I recommend that Defendants be **ordered** to pay Plaintiffs, concerning Mr. Fermin, pre-judgment interest on $187,970.83 (the total of Mr. Fermin's compensatory damages available under the NYLL: unpaid minimum wages, premium overtime pay, spread-of-hours pay and misappropriated tips, but not liquidated damages), calculated at a rate of 9% per annum from August 25, 2010 to February 27, 2015 (a span of 4.52 years). Multiplying the principal of $187,970.83 by the interest rate of 9%, and by the time period of 4.52 years, the pre-judgment interest totals $76,466.53.

Thus, the total award concerning Mr. Fermin is $289,605.23.

### 2. The Damages Calculations Specific To Mr. Moreno

The calculations relevant to Mr. Moreno's damages are provided in Appendix I at 4–5. In summary, I recommend that Defendants be **ordered** to pay Plaintiffs, concerning Mr. Moreno, $8,726.00 for unpaid minimum wages for hours worked up to forty hours per week; $20,376.60 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $1,599.15 for unpaid

---

16. Plaintiffs stated that the total overtime owed to Mr. Fermin for November 1, 2011 to February 28, 2012, was $4,656.00, *Docket No. 14–4* at 1, but that number is not supported by Plaintiffs' detailed calculations; rather, the total should have been $1,319.20.

17. I refer to "apparent" rounding differences because Plaintiffs' calculations do not show how they calculated the length of weeks for these time periods, nevertheless, it appears that this is the cause of small differences between the Court's and Plaintiffs' calculations.

spread-of-hours premiums; and $4,164.64 in liquidated damages under the NYLL and $13,231.20 in liquidated damages under the FLSA, all of which totals $48,097.59.

In addition, I recommend that Defendants be **ordered** to pay Plaintiffs, concerning Mr. Moreno, pre-judgment interest on $30,701.75 (the total of Mr. Moreno's compensatory damages available under the NYLL: unpaid minimum wages, premium overtime pay, and spread-of-hours pay, but not liquidated damages), calculated at a rate of 9% per annum from February 2, 2011 to February 27, 2015 (a span of 4.07 years). Multiplying the principal of $30,701.75 by the interest rate of 9%, and by the time period of 4.07 years, the pre-judgment interest totals $11,246.05.

Thus, the total award concerning Mr. Moreno is $59,343.64.

### 3. The Damages Calculations Specific To Mr. Del Rosario

The calculations relevant to Mr. Del Rosario's damages are provided in Appendix I at 6–7. In summary, I recommend that Defendants be **ordered** to pay Plaintiffs, concerning Mr. Del Rosario, $13,027.20 for unpaid minimum wages for hours worked up to forty hours per week; $21,668.00 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $1,513.35 for unpaid spread-of-hours premiums; and $4,696.24 in liquidated damages under the NYLL and $16,611.60 in liquidated damages under the FLSA, all of which totals $57,516.39.

In addition, I recommend that Defendants be **ordered** to pay Plaintiffs, concerning Mr. Del Rosario, pre-judgment interest on $36,208.55 (the total of Mr. Del Rosario's compensatory damages available under the NYLL: unpaid minimum wages, premium overtime pay, and spread-of-hours pay, but not liquidated damages), calculated at a rate of 9% per annum from March 19, 2011 to February 27, 2015 (a span of 3.95 years). Multiplying the principal of $36,208.55 by the interest rate of 9%, and by the time period of 3.95 years, the pre-judgment interest totals $12,872.14.

Thus, the total award concerning Mr. Del Rosario is $70,388.53.

### iii. Attorney's Fees, Paralegal's Fees And Costs Sought By Plaintiffs Collectively

Plaintiffs request that the Court award them attorney's and paralegal's fees and costs. *Docket No. 1; Docket No. 14* (Plaintiff's counsel's affidavit); *Docket No. 14–5* (timesheet for attorney's and paralegal's fees); *Docket No. 14–6* (summary of costs). The FLSA and the NYLL both provide for this recovery in the event of successful wage protection claims. *See* 29 U.S.C. § 216(b); N.Y. Lab. L. § 198(4).

### 1. Attorney's Fees And Paralegal's Fees

■ The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged. *See generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983).

■ Requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show for each attorney the date the work was done, "the hours expended, and the nature of the work done." *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07 Civ. 2568(JG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012) (quoting *N.Y.S. Ass'n for Retarded Children*, 711 F.2d at 1148); *see Scott v.*

*City of N.Y.*, 643 F.3d 56, 58–59 (2d Cir. 2011). In support of their claim for attorney's fees, Plaintiffs submit a billing statement. *Docket No. 14–5.* They also submit Mr. Cilenti's affidavit stating that he works for the firm Cilenti & Cooper, PLLC; that he has over sixteen years of experience in general civil litigation; and has handled over 250 wage-and-hour cases during that time. *Docket No. 14* ¶ 12. Mr. Cilenti seeks an hourly fee of $400.00. *Id.* ¶ 12.

 The Court may look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York in order to determine whether the fees requested are reasonable. In so doing, I note Mr. Cilenti successfully tried an FLSA and NYLL action in this District very recently, and that this Court just two weeks ago awarded Mr. Cilenti a $350.00 hourly rate on the related fee application. *See Fundora v. 87–10 51st Ave. Owners Corp.*, No. 13 Civ. 738(JO), 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015) (reducing Mr. Cilenti's hourly rate to $350.00 from the requested $400.00, following a jury verdict in his clients' favor). I recommend reducing Mr. Cilenti's fee request to $350.00 in this action as well; this default judgment motion is relatively straightforward as compared to a contested trial and that rate is reasonable as compared to other recent wage-and-hour cases. *See, e.g., Man Wei Shiu v. New Peking Taste, Inc.*, No. 11 Civ. 1175(NGG), 2013 WL 2351370, at *13 (E.D.N.Y. May 28, 2013) (awarding a $275.00 hourly rate to an attorney with ten years' experience in FLSA cases and $225.00 per hour to a mid-level associate).

Mr. Cilenti has expended 22 hours litigating this case, which I find to be a reasonable amount of time after studying the tasks he undertook to prosecute this FLSA and NYLL default action and considering he represented three clients, one of whom (Mr. Fermin) raised a gratuity claim different than the others. After multiplying Mr. Cilenti's 22 hours by the $350.00 hourly rate, I find that Plaintiffs are entitled to recover $7,700.00 for Mr. Cilenti's fees.

The billing statement also includes 4.4 hours of work by a paralegal named Jennett Pena, *Docket No. 14–5*, whose professional credentials were not provided to the Court, yet for whom Plaintiffs seek to recover $100.00 per hour, *Docket No. 14–4*. In the absence of any information about Ms. Pena, it is recommended that her hourly rate be reduced to the presently prevailing hourly rate of $75.00 in this district for paralegals assisting with wage-and-hour cases. *See, e.g., Hernandez v. Prof'l Maintenance & Cleaning Contractors Inc.*, No. 13 Civ. 2875(FB)(LB), 2015 WL 128020, at *8 (E.D.N.Y. Jan. 8, 2015). With this reduction in her hourly rate, the 4.4 hours she spent on this case entitles Plaintiffs to $330.00.

### 2. Costs

Both the FLSA and New York state law provide for an award of costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4). Here, Plaintiffs request costs of $400.00 for the filing fee, $159.00 for the service of the summons and complaint, and $82.00 in copying fees, for a total amount of $641.00. I find this amount to be reasonable.

### 3. Conclusion

In light of the foregoing, I respectfully recommend that the District Judge **order** Defendants to pay Plaintiffs $8,671.00 in attorney's and paralegal's fees and costs (representing Mr. Cilenti's $7,700.00 fee, Ms. Pena's $330.00 fee and $641.00 in costs).

### iv. Post-judgment Interest

 Although Plaintiffs' Complaint requested an award of post-judgment inter-

est, *Docket No.* 1 at 23, Plaintiffs have not made any request for or any argument as to post-judgment interest on this motion, *Docket No. 15* at 22. Per 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report & recommendation adopted,* No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see generally Begum v. Ariba Disc., Inc.*, No. 12 Civ. 6620(DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case). Thus, in *Tacuri v. Nithun Constr. Co.*, No. 14 Civ. 2908(CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015), the court awarded the plaintiffs post-judgment interest, despite their failure to request post-judgment interest, on all sums awarded concerning their FLSA and NYLL wage-and-hours claims. Therefore, I respectfully recommend that the District Judge **order** Defendants to pay Plaintiffs post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See id.*

## IV. Conclusion

In light of the foregoing, I respectfully recommend that the District Judge **enter** default judgment against Defendants and **order** that Defendants are jointly and severally liable for the following $428,008.40 damages award.

First, I recommend that the District Judge **order** that Defendants pay the following in damages to Mr. Fermin: $12,555.60 for unpaid minimum wages for hours worked up to forty hours per week; $38,155.68 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $8,559.55 for unpaid spread-of-hours premiums; $128,700.00 in misappropriated tips; $10,761.07 in liquidated damages under the NYLL and $14,406.80 in liquidated damages under the FLSA; and $76,466.53 in pre-judgment interest, for a total damages award of $289,605.23.

Second, I recommend that the District Judge **order** that Defendants pay the following in damages to Mr. Moreno: $8,726.00 for unpaid minimum wages for hours worked up to forty hours per week; $20,376.60 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $1,599.15 for unpaid spread-of-hours premiums; $4,164.64 in liquidated damages under the NYLL and $13,231.20 in liquidated damages under the FLSA; and $11,246.05 in pre-judgment interest, for a total damages award of $59,343.64.

Third, I recommend that the District Judge **order** that Defendants pay the following in damages to Mr. Del Rosario: $13,027.20 for unpaid minimum wages for hours worked up to forty hours per week; $21,668.00 for unpaid minimum wages and overtime premium pay for hours worked in excess of forty hours per week; $1,513.35 for unpaid spread-of-hours premiums; $4,696.24 in liquidated damages under the NYLL and $16,611.60 in liquidated damages under the FLSA; and $12,872.14 in pre-judgment interest, for a total damages award of $70,388.53.

Fourth, I recommend that the District Judge **order** that Defendants be held jointly and severally liable for paying Plaintiffs

$8,671.00 in attorney's and paralegal's fees and costs, and that the District Judge **order** Defendants to pay post-judgment interest.

### V. Objections

This report and recommendation will be filed electronically and a copy sent by mail individually to Defendants Las Delicias, Ms. Marconi and Mr. De Pierola at Las Delicias Peruanas Restaurant, Inc., 43–07 104th Street, Corona, New York 11368. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Roslynn R. Mauskopf, at 225 Cadman Plaza East, Brooklyn, New York 11201, within seventeen days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b).

Filed Feb. 27, 2015.